UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

TONI TATE, for herself and on behalf of
her minor child, CALI MCCULLER;
CHRISTOPHER HARBIN; AND CIERRA
HARBIN,

          Plaintiffs,

          v.

THE CITY OF CHICAGO; SUZANNE L.
NIEMOTH; JESSE ALVAREZ; JEREMY D.
ARRINGTON; OSCAR BENAVIDES;
ANTHONY P. BRUNO; YVETTE CARRANZA;
DANIELLE M. CUSIMANO; VICTOR J.
GUEBARA; HORST E. HEGEWALD;
BRENDAN T. MULLIGAN; SEAN RYAN;
JEFFERY A. SHAFER; MATTHEW J.
SIEBER; CURTIS L. WEATHERSBY; and
OTHER CURRENTLY UNKNOWN CHICAGO
POLICE OFFICERS,

          Defendants.

No. 19 C 7506

Judge Thomas M. Durkin

**MEMORANDUM OPINION AND ORDER**

Toni Tate and her children allege that certain Chicago Police Officers violated their civil rights and state law in obtaining and executing a search warrant of their apartment. They bring claims against both the individual officers and the City of Chicago. The City has moved to bifurcate and stay the claims against it, R. 106, and that motion has been joined by the individual officers, R. 108. Those motions are granted.

## Background

The Chicago Police did not find any evidence of criminal activity when they searched Plaintiffs' home. Plaintiffs allege that the police pointed guns at them during the search without cause, including pointing a gun at plaintiff Cali McCuller who was an infant at the time.

Plaintiffs bring constitutional claims against the individual officers for unlawful search, false arrest, and seizure of property, as well as state law claims for assault and intentional infliction of emotional distress. Plaintiffs bring a constitutional excessive force claim against the City alleging the following practices: (1) pattern of using excessive force against African-American children; (2) failure to investigate and discipline incidents of excessive force against African-American children; (3) absence of official policy and training to refrain from the use of firearms and excessive force against children; and (4) pattern of executing search warrants in the wrong homes, traumatizing children in the process. *See* R. 60 ¶¶ 22-32, 130-161. Plaintiffs do not bring excessive force claims against the individual officers.

## Analysis

Federal Rule of Civil Procedure 42(b) provides that "[f]or convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues [or] claims." A "district court has considerable discretion to order the bifurcation of a trial." *Krocka v. City of Chicago*, 203 F.3d 507, 516 (7th Cir. 2000); *see also Volkman v. Ryker*, 736 F.3d 1084, 1089 (7th Cir. 2013) ("A district

court's decision to bifurcate or to hold separate trials is reviewable for an abuse of discretion.").

The Seventh Circuit has noted that it is "sensible" for a district court to bifurcate and stay a *Monell* claim when the facts of the case are such that the municipality cannot be liable absent liability of the individual state actor. *See Swanigan v. City of Chicago*, 775 F.3d 953, 962 (7th Cir. 2015). "*Monell* claims are most often bifurcated in this district when a case is rooted in allegations of excessive force," because such claims are necessarily based on an individual officer's use of force. *See Arrington v. City of Chicago*, 2018 WL 3861552, at *1 (N.D. Ill. Aug. 14, 2018); *see also Andersen v. City of Chicago*, 2016 WL 7240765, at *3 (N.D. Ill. Dec. 14, 2016); *Horton v. City of Chicago*, 2016 WL 316878, at *2 (N.D. Ill. Jan. 26, 2016); *Carr v. City of North Chicago*, 908 F. Supp. 2d 926, 934 (N.D. Ill. 2012). Here, even if the individual officers can avoid liability through qualified immunity or by showing that a policy, custom, or practice required them to take the actions they did, their actions still must be constitutionally excessive for the City to face liability. Thus, it is more efficient to bifurcate the case and determine whether the actions of the individual officers rise to a constitutional violation before ordering what is inevitably extensive and expensive discovery into the City's policies and practices.

Plaintiffs contend that bifurcation is inappropriate here because their excessive force claim is brought only against the City, so resolution of the claims against the individual officers cannot resolve the claim against the City. *See* R. 119 at 7 ("Where, as here, the complaint is structured in a way that resolving the claims

against he [individual] officers would not in principle resolve the *Monell* claim, bifurcation can and will easily result in 'double work' for the parties and the Court."). This argument puts form over substance. The City can only act through the officers. Even if Plaintiffs had only sued the City, determination of the City's liability would still begin with an analysis of the officers' conduct. Whether or not the officers are legally liable does not change the fact that they must have committed an action that rises to the level of a constitutional violation in order for the City to be liable.

Nevertheless, at least two courts in this district have agreed with Plaintiffs' argument and denied motions to bifurcate for this reason. *See Tate v. City of Chicago*, 2019 WL 2173802, at *4 (N.D. Ill. May 20, 2019) (citing *Mendez v. City of Chicago*, 18 C 05560 (N.D. Ill. Feb. 20, 2019)).[1] The City points out that the courts in *Tate* and *Mendez* failed to consider the assault and intentional infliction of emotional distress claims brought in those cases, as well as this case. The City argues that a jury's decision on the state law claims "would render a decision as to whether [Plaintiffs were] subjected to excessive force by [the individual officers]." R. 122 at 7. Plaintiffs do not expressly reference the elements of the relevant claims in making this argument, but the Court understands Plaintiffs to contend that it would be "inconsistent" for a jury to find the individual officers liable for assault or intentional infliction of emotional distress and also find that the individual officers did not use

---

[1] The relevant transcript from *Mendez* is attached as an exhibit in this case at R. 119-2.

4

excessive force. *See id.* at 8. In other words, the City contends that jury findings on the state law claims will control whether liability for the City is possible.

The Court cannot say based on the briefing on this motion whether different findings on these claims are necessarily legally inconsistent. Closer examination of the specific elements would be necessary to make that determination.

Regardless, as discussed, the fact that Plaintiffs bring an excessive force claim against the City and not the individual officers is not an obstacle to bifurcation. The problem the parties perceive can be resolved simply during a trial of the claims against the individual officers by a special interrogatory to the jury asking for findings on whether any of the individual defendants used excessive force. As discussed, such a finding is a necessary first step to determining the City's liability, and a jury that hears facts about the individual officers' actions will be in the best position to determine whether those actions constituted a constitutional excessive force violation. Of course, since Plaintiffs have not brought an excessive force claim against any of the individual officers, the Court would not enter judgment against any of them on the jury's excessive force finding. Rather, that finding would pertain only to the claim against the City.

Plaintiffs also argue that bifurcation will not promote efficiency in the case because the "the City has already conducted the same *Monell* discovery required here in three pending cases." R. 119 at 11. Perhaps this is true. But there are a number of circumstances that could cause discovery to proceed differently in this case, including a longer relevant time period, different attorneys, and a different judge. Furthermore,

regardless of how much discovery in previous cases can be applied to this case, Plaintiffs do not contend that this will obviate the need for depositions. Unsurprisingly, Plaintiffs cannot say now how many depositions will be necessary for the *Monell* claims; they only say that it will be half as many as necessary for the claims against the individual officers. *See* R. 119 at 10. But the City notes that there have already been twelve *Monell* depositions in one of the cases Plaintiffs cite as a comparator, and Plaintiffs are seeking more. *See* R. 106 at 6 n.3. That is plenty to justify staying the *Monell* claims because of the potential that a jury finds that the individuals did not actually use excessive force.

The City also argues that bifurcation is necessary to avoid prejudice at trial to both the individual defendants and the City. The Court agrees that this is likely true for the reasons stated in *Bradford v. City of Chicago*, 2019 WL 5208852, at *3-4 (N.D. Ill. Oct. 16, 2019). It is unnecessary to address this issue in detail, however, because the Court finds that the efficiencies produced by staying *Monell* discovery and trial are sufficient alone to justify bifurcation.

Lastly, the City asks the Court to enter as an order its consent to entry of judgment against it should the individual defendants be found liable. Plaintiffs do not object to this specifically but argue that it is an attempt at a "back-door dismissal" of the *Monell* claims because the City will use it to argue, as some courts have held, that "plaintiffs are not entitled to any additional relief" beyond the damages the City has agreed to cover. *See* R. 119 at 19 (citing *Parker v. Banner*, 479 F. Supp. 2d 827, 833 (N.D. Ill. Mar. 22, 2007); *Almaraz v. Haleas*, 602 F. Supp. 2d 920, 925 (N.D. Ill.

Oct. 9, 2008)). While this issue is not before the Court at this time, the Court notes that the Seventh Circuit has held that even after plaintiffs have obtained their damages, they are permitted to pursue injunctive relief regarding policies or practices identified in *Monell* claims. *See Swanigan*, 775 F.3d at 962 ("Some cases have remedial import beyond the individual plaintiff's claim for monetary damages, and § 1983 provides a vehicle for obtaining other judicial relief against governmental policies that violate constitutional rights."). Based on this authority, Plaintiffs' fear appears to be unfounded.

Notably, however, the complaint in this case does not expressly seek injunctive relief. The Court will assess any motion for leave to amend the complaint in accordance with the applicable law.

## Conclusion

Therefore, Defendants' motions to bifurcate the case, stay *Monell* discovery, and enter the proposed consent to judgment [106] [108] are granted.

ENTERED:

*Thomas M Durkin*
_____
Honorable Thomas M. Durkin
United States District Judge

Dated: September 27, 2021

7